16, 2016 United States of America v. Alejandro Molina Pavon. You may proceed. May it please the Court. Your Honors, the District Court committed reversible plain error by basing Mr. Molina Pavon's revocation sentence on prohibited statutory factors. The statute governing revocation of supervised release, Section 3583E, excludes from consideration the seriousness of the offense, the need to promote respect for the law, and the need to provide just punishment. In Miller, this Court held that it was error for a District Court to rely on those factors. In Revere and Hudson, this Court held that it was plain error for a District Court to rely on those factors as dominant factors. Here, the District Court committed plain error by relying on those factors. Your Honor, prongs three and four, the important point here is the nature of the error. When you look at the nature of the error, it should tell you to look back to Escalante, Reyes, and Woolley, because the Court's en banc decision in Escalante, Reyes dealt with a court relying on an improper factor. And in Escalante, Reyes, where Judge Alrod and Judge Graves were in the majority, the Court held that the third prong was indeed satisfied, and I'll get to the fourth prong in a minute, but the Court held that the third prong was satisfied and led to the repeated emphasis on anger management, and that that was sufficient to undermine confidence I don't think the government's challenging the third prong, are they? No, they're not, Your Honor, so I'll move on. So we're only dealing with the fourth prong. Yes, Your Honor, I'll move on to that. The fourth prong in Escalante, Reyes was met because, as the en banc Court held, nothing in the record otherwise showed that the sentence was fair or that the integrity or public reputation of the judicial proceedings were protected. And this was in spite of Judge Owen's dissent, where she talked about the defendant's criminal record and that he had abused family members. But in Rivera, the exact same error did not merit a reversal. I'm sorry, Your Honor. Two points about Rivera. First, quite frankly, I find the opinion perplexing because the Court found that relying on the seriousness of the murder was error. But then the Court went on to find that relying on the illegal re-entry and the potential sentence didn't meet the fourth prong. And so, to me, the reasoning of the opinion is you can't do this with regard to the murder, but because the Court did the same thing with regard to the illegal re-entry, it doesn't meet the fourth prong. But even assuming that I did understand the opinion, Your Honor, in this case, there's only one crime that the Court relied on. So you get even into more of a contradiction if you use the reasoning of Rivera. You end up saying, okay, the Court erred by looking at the seriousness of the illegal re-entry in this case. And then you say... In the instant case. In the instant case. And then you would have to say, if you use the reasoning of Rivera, that because the Court plainly erred, it doesn't meet the fourth prong. Well, there are lots of cases where we find prong two satisfied that we choose not to exercise our discretion in prong four. And in fact, I think some of our more recent cases emphasize the rareness, how this should be used sparingly, how it needs to really be used. And our more recent precedent emphasizes that quite a bit. Why would this be the type of shocking situation that members of the public would be appalled at the justice system, as some of our language says, for us to not exercise our discretion here? Well, first of all, Your Honor, going back to what I emphasized at the beginning, the analysis of the fourth prong, not the shock to conscience standard. I mean, I'm... Well, I won't repeat myself, but second of all, in my reading of Fifth Circuit case... Are you agreeing that the shocking to conscience standard is an applicable standard? No, I'm saying it's not. I'm saying the Escalante-Reyes standard is the right standard. But second of all, my reading of Fifth Circuit case law shows me that shock to conscience standard is not Fifth Circuit law. That standard started out in the Escalante-Reyes dissent by Judge Smith, and then Judge Stewart quoted that language... In Segura? In Segura, but didn't... And incorrectly, I think, transposed it from the dissent into the majority opinion. That's absolutely correct, Your Honor. And then in Solano, cited by the government, we have an opinion by Judge Smith that talks about shock to conscience from Segura and doesn't know that that originally comes from his dissent in Escalante-Reyes. Well, don't you think he does know that? I mean, you can't... That's an assumption on your part, that he doesn't know that came from his own dissent. Well, if he does know it, then what's the explanation for not saying... The court has moved towards that understanding of Prong 4. I mean, that's one very possible understanding. I'm not saying the court has moved, but isn't that one other option? I would think, Your Honor, the more... I would adopt the explanation that someone forgot to read the blue book. That would be my explanation for it, not that the court has moved. It's from a dissent. So... Okay, well, regardless, can I ask you... This is not the type of plain error that no one realized at the time, and it's just something that didn't come up at the hearing. You know, many times the topic isn't even raised, and then someone realizes it after the fact, there's a problem. It seems that Mr. Davis said specifically, I would recommend the 11-month sentence, and we understand that we're not dealing with an 11-month sentence here, at the high end because there could have been another charge filed in this case, and he would have been looking at a significantly higher sentence. So that was argued specifically to the court. Exactly, Your Honor. And no one said at that time... This is not one of those hidden plain errors that we deal with often. No one said, that's not a legitimate reason to give the 11-month sentence. That's correct, Your Honor. That's why we're under Rule 52B and not Rule 52A. And in fact, I think I would even go farther than you've gone. The whole proceeding was like a sentencing on the illegal reentry and was all about the egregious nature of the illegal reentry. Well, perhaps you go a little far, because the court does come back around to all the other reasons that that's an appropriate sentence at the end of the hearing. As I read it, the court mentions 3553A. But it doesn't just mention that. It says... Oh, it mentions some factors in 3553A. Some of the factors. Yes, but it mentions 3553A without excluding the impermissible factors. So its citation to the sentence even makes the error to... Its citation to 3553A even makes the error worse. In fact, it seems like it would pass for what Rivera refers to as the passing remarks. Correct. Correct, Your Honor. The 3553A remark is a passing remark. Yes, Your Honor, I quite agree. What about in order to protect the public from further crimes of this defendant? Yes, Your Honor. That's a proper factor, isn't it? Yes, it is, Your Honor. And that's the last reason the district court gives. Yes. But, Your Honor, as the court said in Rivera, the improper factors don't have to be the sole factors. They just have to be the dominant factors. And when you look at the hearing, those two factors, the seriousness of the offense and the need for just punishment, were the predominant factors throughout the proceeding. In fact, the district court judge called the U.S. attorney up out of the audience and asked him why hasn't this been prosecuted and then asked what would the guidelines be. Well, counsel, there's a difference between what a sentencing judge says and what he understands and applies to decide what to do about the revocation of this supervised release. And you wouldn't expect and won't for the appellate court to start telling judges, you can't say anything about the prior offense. You can't say anything about this or that or the other. And can't you read the dominant reasoning from this sentencing judge to deter criminal conduct, which is a perfectly good reason? Your Honor, I read virtually, well, I would say most of the proceeding as being, as pursuing the purpose of punishing, of rendering a punishment based on the severity of the offense and the need for just punishment, which are improper factors with regard to what a district court judge thinks versus what he speaks, the district court and this court are courts of record. And so the only thing I think this court can go on, regardless of what the district court judge is thinking, is the record in the case. And that's what I'm basing my argument on, Your Honor, is the record in the case, not what was behind the judge's words, which I don't think I can determine or what I attempt to. Can't you rely on the seriousness of the offense in applying the other 3583E5 factors according to a Rivera post-opinion opinion? The rehearing opinion in Rivera I view as helpful almost the philosophical discussion about the fine line between the seriousness of the offense and the reason for the revocation. And the court does lay out that it is a fine line. But at the bottom, what the court nevertheless, as I read it, ends up with, is if these factors are dominant factors, then it's improper. So, yes, I appreciate the discussion in the rehearing, but I think the court still comes to the same conclusion as in the original opinion. Okay, and I appreciate your discussion of the case right now, but my specific question is, is it appropriate to use the seriousness of the offense in applying the other 3583E factors? I'm not sure I understand. You mean, for example?  The seriousness comes into the nature and circumstances, and that is a proper factor. Yes, it is, but the judge was focused on the punishment for the offense. Well, the seriousness of the offense. Yes. Which is an appropriate thing in the nature and circumstances. I don't think my position is— And I just want to clarify which offense you're talking about, because both of you understand which one you're talking about. I'm talking about the one that— I'm talking about the 1326 violation that was a condition of this supervised release. That's what I understand, the seriousness of the offense, the offense that the court—the illegal reentry that the district court focused on, the guidelines for the illegal reentry. And so I would say I don't think that you can— But, well, there's a significant thing that in Rivera we're talking about a murder for which there had been a conviction, aren't we? In Rivera, the murder, I thought, was the improper— focusing on the seriousness of the murder was the improper factor, just as here focusing on the seriousness of the 1326 is an improper factor. But to answer your question, Your Honor, I don't think that the court's opinions in Escalante-Reyes or the other— that whole line of cases has any meaning if you can just take the improper factor and then say, oh, I folded it into a proper one, so that's fine. I think that does away with the holding of this line of cases because you're just allowing the use of an improper factor under the guise of a proper factor. So my answer would be no, you can't do that. No, well, that means if you objected to the improper factor, then you would prevail. But if you don't object to the improper factor and otherwise the sentence is within the statutory limits and otherwise appropriate, the court may not choose to exercise its discretion when there was no objection before the district court. Well, that's not what the court's case law teaches me. In fact, in Hudson, this court reversed in an unpublished opinion where it was plain error. So I don't see how we can say categorically you can't meet the fourth prong, especially— But it's not categorically. It's discretionary case by case, isn't it? Well, yes, it is discretionary, but how does Escalante-Reyes reverse en banc? I mean, that was a below-guideline sentence. We chose to exercise our discretion in that case. Right, and as a matter of law, it's got to be based on something. And so when I look at Escalante-Reyes and I see the standards used for the third and fourth prong, I see that they are satisfied here. Your Honors, I request that you reverse the sentence and remand for resentencing. Thank you. When you come back, will you go over your best argument of why we should exercise our discretion here? Just make that straight up. Yes. Okay. Thank you, Your Honor. May it please the Court. Good morning. My name is Jessica Akins, and I represent the government in this appeal. This was actually my first argument before the Fifth Circuit, and I'm very glad to be here. I wanted to first respond to the appellant's argument with regard to the second prong in terms that this error was clear and obvious. I think there's a wealth of case law from the Fifth Circuit that shows this type of error is not clear and obvious. And there is actually a reasonable debate about that. And with regard to the argument about it being the dominant factor, I think the record in this case shows it was actually the very last factor. And there are several cases from this Court that discuss that in terms of the judge laying out the 3553 factors. The judge first said he named all the factors, and then he said protection of the public. And only when there was a general objection, the judge then put more factors on the record to add the criminal history and then said the additional crime will go unprosecuted. So it was actually the very last factor, number four, when he was going through his justification for this sentence. To the extent the Court did err, assuming arguendo that the Court did err, did Mr. Davis lead the Court into the error? In terms of, oh, because he asked, he made that factor. I don't know that he did because he didn't ask for the two years. He did point out a fact that was limited to everyone. He said that's why you should give the 11 months. He said that specific reason was why he thought the 11 months in the high end. Well, and Judge, I think when we look at these prongs, we are told on the fourth prong that you can look at it independently from the second prong. And so I don't know that there's anything that keeps a judge from considering that in the fourth prong as one of the reasons, just like the judge in Rivera did. But Mr. Davis shouldn't have argued that to the District Court. Regardless of whether the District Court relied upon that, that's not correct under our case law. If he was arguing strictly for the offense, that's correct. But as you said, they all interplay. The seriousness, the history, it's also a violation. And I think sometimes it is difficult for prosecutors to parse that out. It may be an offense, but it also was a special condition under his terms that he violated in addition to a second term. This defendant pled true to two separate violations, and the judge was looking at all of these things when he came to the two-year sentence. In terms of the fairness and integrity— But you will agree he spent the majority of the time he spent talking about the unindicted offense. Well, the U.S. Attorney's discussion with the trial court was about one page on the record, and the sentencing hearing was 11 pages. And I think you do bring up a good point, and I think it— And a majority of those pages were talking about that unindicted offense. Three of them. That's correct, Your Honor. But if you look at the nature of that circumstance, as you know, frequently in these cases, you have two cases. There's a companion case. There's normally a revocation case, and the companion new offense, illegal reentry. And I think the judge was really just trying to make an administrative decision, verify, is there another case somewhere? Do I need to be aware of that? And make a diligent decision. I don't even think that went into the sentencing at that point. And as you can see, he does ask the U.S. Attorney to come up and says, can you just enlighten us on that? And then the U.S. Attorney goes into the process and gives a little background on why we exercise our discretion to not file the new case. So a lot of that discussion doesn't have to do with punishment. It really has to do with just the administrative procedure of why there's not a second case. And also of note, the U.S. Attorney did not weigh in on the sentencing at all. He didn't say a word about it, and it looks like he left the courtroom. It was only later when the assistant said, I think these violations are serious and you should give the maximum of 11 months. You're not implying that it would be improper or something for the U.S. Attorney to weigh in? If the U.S. Attorney has been called up, the U.S. Attorney can participate. Not at all. I'm just responding to their reply brief that insinuated that that had something to do with the judge's decision. And I think if you look at this record, the judge came to this two years on his own. Neither party asked for that sentence. I think he was exasperated by this person's lack of respect for the law, all the things he kept doing, continued criminal behavior, six deportations, eight convictions in Harris County. Three of those are serious felonies. If you track the dates of deportation, every time he comes to the country, he's committing a crime. Twenty-nine aliases, four different dates of birth. This is not a person or a case where the fourth prong should come into play. I hear you talking about all that. I just don't see all that on this transcript at the hearing. What I read was the judge having what appeared to be an inordinate amount of concern about that unindicted offense. Sure. And he was concerned with that, just like the judge in Rivera. And in that court, I mean, we didn't reverse on that. It's just one factor. And I think it's different to look at the second prong and the fourth prong when you're talking about that time. And the truth is, had they put in a new case, it would have been two and a half to three years. I don't know that that's necessarily improper under the fourth prong, even if this court were to find it was impermissible under the second prong. Was the court that had been dealing with this particular defendant over time so the court knew of these circumstances? There are some times where it's the same judge, so they don't have to go into as much detail. Is this that situation or not? I think that happens a lot, Your Honor. But is that this situation? Oh, it is this situation. This judge is the same judge who had previously sentenced? Yes. In fact, the range on the original offense was 30 to 37 months. Judge Werlein sentenced this defendant to the highest range of 37 months. Then he goes on supervised release, and within two years is back in the country committing two crimes. And so, sure, we would like to have judges put everything that would be helpful to us on the record, and sometimes they just don't. It doesn't mean it's reversible. This judge has been dealing with this defendant for quite a while. In fact, he gave the maximum sentence, and this defendant committed more crimes. And so when he did say on the record all of the 3553 factors, that does include deterrence of criminal conduct, nature and circumstances, and his criminal history. So he didn't spell those out maybe not as much as we would like him to, but he sure did say these are the factors I've considered in choosing this sentence. I think when you look at the PSR and the sentencing hearing, the deception and lies of this defendant are just glaring. The defendant even lied about where he was from to this judge. In the PSR, he says he's from Mexico. At the sentencing hearing, he says he's from Honduras. He gives some bizarre stories of being shot at and a gang after him and cutting off his thumb, and then he tells the probation officer that he got into a car accident. And so when you look at this record, there's so many inconsistencies, criminal histories, and deception to this court. And although it is true that under Miller the judge cannot punish the defendant for the crimes, Miller also says you can punish the defendant for violating the terms of supervised release. And underlying that, in Penner, the court talks about the court's trust. This judge has been with this defendant the entire time, and time after time, he has abused the court's trust. Was the beyond the 30 days issue, is that just unique to this case, that the problem of why they weren't able to go into to actually bring the charge for this case, that they were concerned about the timing? Is that a systemic thing, or is that just this is a one-off situation? I don't know offhand, Your Honor, honestly, and obviously it's not part of the record. Well, it is part of the record that it was in this case. Yes, I'm sorry, that part. I meant in terms of how often it happens. I don't know that. Like I said earlier, you do see it happen frequently as two cases, and I think that's why the judge was asking these prudent questions to make sure that we have everything we need. But the U.S. attorney did just say, we feel like the revocation will be fine. We don't feel the need to file the new case. We didn't have our internal things in place, so we're just going to proceed on the revocation. And I think that's an okay decision for the United States to make. As you know, they can bring a case at any time, and at this time they chose not to. And I don't really think it's a consequence in terms of looking at the revocation when the two years was the maximum sentence this judge could give. Counsel, I think we have your argument unless you have something further. I don't. Thank you very much. We just ask that you affirm the sentencing decision of the district court. Thank you. Your Honor, as you've heard previously, my best case for the fourth prong in light of your question is Escalante-Reyes, where the court said, in light of the sentencing record as a whole, we conclude that the district court's repeated emphasis on Escalante-Reyes' need for anger management treatment in prison affected the fairness, integrity, or public reputation of the sentencing proceedings, giving Congress' express admonition that imprisonment is not an appropriate means for promoting correction and rehabilitation. So that, and let me just go into, and maybe I didn't say it clearly at first, this situation is a situation where Congress has put off bounds a certain factor. And what Escalante-Reyes shows us is that where Congress puts a factor off bounds and a court uses it as a dominant factor, it does affect the fourth prong, despite the person's criminal record. As I stated, Judge Owen, in her dissent, talks about his abuse of family members and his criminal record. But this is a unique case, and I discern from Escalante-Reyes that that's why the opinion was written that way. The other thing I think, and this is just something that I've come to believe about this type of situation, where Congress puts a factor off bounds. If you just look at the criminal record and say, this is a bad person, it amounts to saying bad people don't deserve the protection of the law. And Congress has told us that you can't use this factor, and so they do. So, Your Honors, to be blunt about my answer to your question, it's Escalante-Reyes at page 425 to 426, and I ask that you vacate the sentence and remand for resensing. Can you tell us anything about this particular case that merits our use of our discretion? I understand you're saying it's analogous to the other case, and that's why we should do it, but is there anything about this particular case that merits our use of our discretion? Well, two things. Number one, the fact that it was virtually a sentencing on a crime that was not prosecuted, using a factor that was put off bounds. And second of all, in light of his prior record, and I'll let you be the judge, Your Honor, but from the prior records that usually come up to this court on 1326, with sexual assault, murder, and just a row of crimes, this person's prior record is not that. And I think it's quite less than that. No doubt he does have two drug convictions involving less than one gram, and I think he has a couple of thefts and a couple of misdemeanors. But as the records in these cases go, his record is nowhere near what this court is normally dealing with. So, Your Honor, based on the use of an improper factor and on the facts of this case, I ask that you vacate the sentence and remand for resentencing. Thank you, Your Honor. Thank you. Counsel, I believe we have your argument in this case, and it's under submission. And congratulations for making it through your first argument. Ms. Aikens and Mr. Sokolov, very appreciate your argument as always. Thank you, Your Honor.